**No. 23-10814**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

APRIL M. PIPKINS, individually,
and as the Personal Representative of the
ESTATE OF EMANTIC FITZGERALD BRADFORD, JR.,

*Plaintiff-Appellant,*

v.

DAVID ALEXANDER; CITY OF HOOVER ALABAMA;
HOOVER MALL LIMITED, L.L.C., d/b/a RIVERCHASE GALLERIA MALL;
and BROOKFIELD PROPERTIES RETAIL, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Alabama

No. 2:19-cv-01907

---

### APPELLANT'S OPENING BRIEF

---

Devon M. Jacob, Esquire
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, PA 17055-0837
717.796.7733

*Attorney for Appellant*
APRIL M. PIPKINS

No. 23-10814
**APRIL M. PIPKINS v. DAVID ALEXANDER, et al.**

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Alexander, David (Appellee/Defendant)

Barganier Law Group, LLC (Counsel for April Pipkins)

Barganier, Rodney F. (Counsel for April Pipkins)

Ben Crump Law, PLLC (Counsel for April Pipkins)

Borden, Gray M. (United States Magistrate Judge)

Bradford, Andrew W. (Decedent's Sibling)

Bradford, Cle'mon (Decedent's Sibling)

Bradford, Sr., Emantic F. (Decedent's Father)

Brookfield Properties Retail, Inc. (Appellee/Defendant)

City of Hoover, Alabama (Appellee/Defendant)

Crump, Benjamin L. (Counsel for April Pipkins)

Dillard, Joel E. (Counsel for David Alexander)

Dillard, McKnight, James & McElroy, LLP (Counsel for David Alexander)

Estate of Emantic Fitzgerald Bradford, Jr. (Appellant/Plaintiff)

Evans, Roderick J. (Counsel for City of Hoover)

Gaines, Gault & Hendrix, PC (Counsel for Brookfield Properties and Hoover Mall)

Jacob, Devon M. (Counsel for April Pipkins)

Jacob Litigation, Inc. (Counsel for April Pipkins)

James, Jr., Donald R. (Counsel for David Alexander)

Jordan, Albert L. (Counsel for City of Hoover)

Hoover Mall Limited, LLC (Appellee/Defendant)

Lee, Frankie E. (Counsel for April Pipkins)

Macoy, Jr., Cecil H. (Counsel for City of Hoover)

Marable, Michael J. (Counsel for Brookfield Properties and Hoover Mall)

McKnight, David (Counsel for David Alexander)

Newton, Daniel J. (Counsel for Brookfield Properties and Hoover Mall)

Pipkins, April M. (Decedent's Mother and Appellant/Plaintiff)

Pipkins, Khalil L. (Decedent's Sibling)

Proctor, R. David (United States District Judge)

Wallace, Jordan, Ratliff & Brandt, LLC (Counsel for City of Hoover)

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff, April M. Pipkins, the biological mother of the decedent, Emantic Fitzgerald Bradford, Jr., requests that oral argument be scheduled in this appeal. This appeal addresses among other issues, the issue of whether a police officer who used deadly force against a Good Samaritan – shooting him in the back of the head without providing him with a verbal warning – is entitled to qualified immunity. The public has shown great interest in this case. Due to the importance of the issues involved, Plaintiff should be provided with every opportunity to fully present her arguments on appeal.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ........................................................................ **C-1**

**STATEMENT REGARDING ORAL ARGUMENT** ........................................... **i**

**TABLE OF CONTENTS** ........................................................................ **ii**

**TABLE OF CITATIONS** ....................................................................... **v**

**JURISDICTIONAL STATEMENT** ....................................................... **1**

District Court's Jurisdiction ................................................................. 1

Eleventh Circuit's Jurisdiction. ........................................................... 1

The Filing Dates Establishing the Timeliness of Appeal. ........................ 1

Final Order/Judgment. ....................................................................... 1

**STATEMENT OF THE ISSUES** .......................................................... **2**

**STATEMENT OF THE CASE** .............................................................. **3**

Course of proceedings and dispositions in the district court ................... 3

Statement of facts. ............................................................................ 4

Scope of review for each contention. .................................................. 8

**SUMMARY OF THE ARGUMENT** ..................................................... **9**

**ARGUMENT** ...............................................................................10

**A.District Court Committed Error in Deciding as a Matter of Law that Alexander's Conduct Did Not Constitute a Constitutional Injury.** ................**10**

    1.   The Totality of Circumstances Fell Short of the Requisite Probable Cause that Bradford Presented as a Serious or Deadly Threat or of Having Committed a Violent Crime. ...............................................................................12

    2.   The District Court Incorrectly Supplanted its *Assumptions* Regarding How Bradford Would Have Appeared to "Reasonable Police Officers" in Place of the Opinions of a Qualified Expert. ...........................................................14

    3.   Whether it was Feasible for Alexander to Issue a Warning Before Shooting and Killing Bradford is a Disputed Material Fact. ............................................16

**B.  Alexander's Failure to Act as a Reasonable Police Officer Would Have Acted Violated Clearly Established Law.** .......................................................18

    1.   The Permanent Seizure of Bradford's Person, Supported by Reasonable Suspicion Only, Violates Clearly Established Law. .........................................19

    2.   Alexander's Failure to Provide Any Warning Prior to the Use of Deadly Force Violated Clearly Established Law. .......................................................21

**C.  District Court Improperly Granted Judgment on the Monell Claim** .....24

**D.  District Court Improperly Granted Alexander State-Agent Immunity.** .25

**E.  The Motion to Dismiss Counts V and VI Should Have Been Denied Because Plaintiff Stated Facially Plausible Claims for Relief.**........................26

    1.  The Motion to Dismiss Counts V Should Have Been Denied. ...................26

    2.  The Motion to Dismiss Counts VI Should Have Been Denied...................30

**CONCLUSION**.......................................................................................................**32**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT** ..........**33**

**CERTIFICATE OF SERVICE** ............................................................................**34**

## TABLE OF CITATIONS

### U.S. Supreme Court

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)......................................................9

*Tennessee v. Garner,* 471 U.S. 1 (1985)...................................................................11

*Scott v. Harris,* 550 U.S. 372 (2007)......................................................................11

*Terry v. Ohio*, 392 U.S. 1 (1968)...............................................................................20

### U.S. Court of Appeals

*Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563 (11th Cir. 1992) ...........11

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306 (11th Cir. 2007)............15

*Cantu v. City of Dothan,* 974 F.3d 1217 (11th Cir. 2020).......................................23

*Charles v. Johnson,* No. 20-12393, 2021 WL 5313668 (11th Cir. Nov. 16, 2021) .22

*Clark v. City of Atlanta, Ga.*, 544 F. App'x 848 (11th Cir. 2013)...........................20

*Dean-Mitchell v. Reese,* 837 F.3d 1107 (11th Cir. 2016).........................................8

*Dorman v. Aronofsky,* 36 F.4th 1306 (11th Cir. 2022) ...............................................9

*Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2003).23

*Estate of Booker v. Gomez,* 745 F.3d 405 (10th Cir. 2014) ....................................23

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240 (11th Cir. 2010) .............................19

*Iko v. Shreve,* 535 F.3d 225 (4th Cir. 2008)..........................................................22

*Jean-Baptiste v. Gutierrez,* 627 F.3d 816 (11th Cir. 2010) .....................................13

*Jacobs v. Ford,* 2022 WL 1123384 (11th Cir. Apr. 15, 2022)...................................24

*Knight ex rel. Kerr v. Miami-Dade Cnty.,* 856 F.3d 795 (11th Cir. 2017) ..............24

*Mercado v. City of Orlando,* 407 F.3d 1152 (11th Cir. 2005)........................... 19, 22

*Montoute v. Carr,* 114 F.3d 181 (11th Cir. 1997) .....................................................13

*Morton v. Kirkwood,* 707 F.3d 1276 (11th Cir. 2013)...............................................11

*New v. Denver,* 787 F.3d 895 (8th Cir. 2015) ...........................................................22

*Pace v. Capobianco,* 283 F.3d 1275 (11th Cir. 2002)...................................... 14, 18

*Patel v. City of Madison, Alabama,* 959 F.3d 1330 (11th Cir. 2020)......................19

*Perez v. Suszczynski,* 809 F.3d 1213 (11th Cir. 2016).........................................11, 12

*Powell v. Snook,* 25 F.4th 912 (11th Cir. 2022) ......................................... 12, 18, 21

*Sibley v. Lando,* 437 F.3d 1067 (11th Cir. 2005)........................................................8

*Weigel v. Broad,* 544 F.3d 1143 (10th Cir.2008)......................................................22

*Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.,* 48 F.4th 1298 (11th Cir. 2022) .8

**U.S. District Courts**

*Bowyer v. Houck,* No. 5:05-CV-00628, 2006 WL 6854908 (S.D.W. Va. Nov. 14, 2006) .................................................................................................................23

*Carrero v. Farrelly,* 310 F.Supp.3d 581 (D. Md. 2018)...........................................23

*Cook v. Cobb Cnty., Georgia,* 2022 WL 3758235 (N.D. Ga. Aug. 29, 2022) .........16

*Gottlieb v. Cty. of Orange,* 871 F.Supp. 625 (S.D.N.Y. 1994)................................23

*Jackson v. Tellado,* 236 F.Supp.3d 636 (E.D. N.Y. 2017)........................................23

*Martinez v. Espey*, 2018 WL 1210932 (N.D. Ala. Mar. 8, 2018) ............................26

*Vaughn v. City of Orlando*, 2009 WL 3241801 (M.D. Fla. 2009) ..........................21

## Federal Statutes

28 U.S.C. § 1367 ...........................................................................................................1

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. § 1331 ...........................................................................................................1

42 U.S.C. § 1983 .......................................................................................................1, 3

## Federal Rules

FED.R.CIV.P. 1 .............................................................................................................31

FED.R.CIV.P. 10 ...........................................................................................................31

FED.R.CIV.P. 56 ........................................................................................................3, 8

## State Courts

*Armstrong Bus. Servs. v. AmSouth Bank,* 817 So.2d 665 (Ala. 2001) .....................30

*Blackwood v. City of Hanceville,* 936 So.2d 495 (Ala. 2006) .................................25

*Brock v. Watts Realty Co.,* 582 So. 2d 438 (Ala. 1991) ..........................................30

*Brown v. Vanity Fair Mills, Inc.,* 277 So.2d 893 (Ala.1973) ..................................30

*Bruck v. Jim Walter Corp.,* 470 So.2d 1141 (Ala. 1985) ........................................30

*Bryan v. Alabama Power Co.,* 20 So.3d 108 (Ala. 2009) ........................................29

*Dailey v. City of Birmingham,* 378 So.2d 728 (Ala. 1979) .....................................29

*Ex Parte Cranman,* 792 So. 2d 392 (Ala. 2000)......................................................25

*Howard v. City of Atmore,* 887 So. 2d 201 (Ala. 2003)...........................................25

*Liberty Nat. Life Ins. Co. v. Weldon,* 100 So.2d 696 (Ala. 1957) ...........................28

*Moye v. A.G. Gaston Motels, Inc.,* 499 So.2d 1368 (Ala. 1986) ............................26

*Ortell v. Spencer Companies, Inc.,* 477 So.2d 299 (Ala. 1985)..............................26

*Raburn v. Wal-Mart Stores, Inc.,* 776 So.2d 137 (Ala. Ct. Civ. App. 1999)...........29

*Sanders v. Shoe Show, Inc.,* 778 So.2d 820 (Ala.Civ.App. 2000)...........................30

*Thetford v. City of Clanton,* 605 So.2d 835 (Ala.1992)...........................................26

## State Statutes

*Alabama Code § 13A-3-21(d)(1) (1975)* .................................................................25

*Code of Alabama §13A-11-70 (1975)* ....................................................................28

## Other Authorities

RESTATEMENT (SECOND) OF TORTS §324A (1966) ....................................................28

# JURISDICTIONAL STATEMENT

**District Court's Jurisdiction:** The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, in that the Second Amended Complaint (Doc. 46) was filed pursuant to 42 U.S.C. § 1983.

**Eleventh Circuit's Jurisdiction:** The Eleventh Circuit has jurisdiction pursuant to 28 U.S.C. § 1291, in that this is an appeal from a final decision issued by a district court.

**The Filing Dates Establishing the Timeliness of Appeal:** On February 22, 2023, the district court entered a final judgment. On March 13, 2023, Plaintiff filed her notice of appeal.

**Final Order/Judgment:** This appeal is from a final order or judgment that disposes of all parties' claims. Specifically, this appeal results from the Final Judgment (Doc. 128) dated February 22, 2023 (in which Memorandum Opinion and Order (Doc. 59), Memorandum Opinion (Doc. 117), Order (Doc. 118), and Memorandum Opinion (Doc. 127) are merged).

## STATEMENT OF THE ISSUES

1.      Whether the district court committed legal error, when despite disputes of material fact, it decided there was no federal constitutional injury, and therefore, that David Alexander was entitled to summary judgment as a matter of law?

2.      Whether the district court committed legal error, when despite disputes of material fact, it decided that David Alexander was entitled to qualified immunity, and therefore, summary judgment?

3.      Whether the district court committed legal error, when despite disputes of material fact, it decided there was no underlying federal constitutional injury, and therefore, the City of Hoover, Alabama; Hoover Mall Limited, L.L.C., d/b/a Riverchase Galleria Mall; and Brookfield Properties Retail, Inc.; were entitled to summary judgment on the *Monell* claims?

4.      Whether the district court committed legal error, when despite disputes of material fact, it decided that David Alexander was entitled to State-Agent Immunity pursuant to Alabama state law, and therefore, summary judgment?

5.      Whether the district court committed legal error, when it granted a motion to dismiss the state law negligence/wantonness claims asserted against the Hoover Mall Limited, L.L.C., d/b/a Riverchase Galleria Mall; and Brookfield Properties Retail, Inc., despite the fact that Plaintiff alleged sufficient facts to state claims for relief that were plausible on their face?

## STATEMENT OF THE CASE

**Course of proceedings and dispositions in the district court:** On July 30, 2020, Plaintiff filed a Second Amended Complaint (Doc. 46), pursuant to 42 U.S.C. § 1983, seeking damages. On August 30, 2020, David Alexander ("Alexander") and the City of Hoover, Alabama ("City") filed Answers (Docs. 51 & 51). On September 9, 2020, the Hoover Mall Limited, L.L.C., d/b/a Riverchase Galleria Mall ("Galleria"); and Brookfield Properties Retail, Inc. ("Brookfield"), filed a Motion to Dismiss (Doc. 52). On February 24, 2021, the district court issued a Memorandum Opinion and Order (Doc. 59), granting in part and denying in part the Motion to Dismiss. On March 8, 2021, the Galleria and Brookfield filed an Answer (Doc. 61).

On May 11, 2022, Alexander filed a Motion for Summary Judgment (Doc. 97). On December 16, 2022, the Court issued a Memorandum Opinion (Doc. 117) and Order (Doc. 118), granting Alexander's Motion for Summary Judgment. On February 22, 2023, the Court issued a Memorandum Opinion (Doc. 127) granting summary judgment to the City, Galleria, and Brookfield on the remaining federal claims pursuant to FED.R.CIV.P. 56(f), and declined to exercise jurisdiction on Plaintiff's remaining state law claims. On February 22, 2023, the district court issued a Final Judgment (Doc. 128).

**Statement of facts:** On November 22, 2018, Alexander was employed by the City as a police officer. *Alexander Dep.,* Doc. 114-3, at p.12:7-17. Alexander and a second police officer were in uniform on foot patrol on the second floor of the Galleria Mall. *Alexander Dep.,* Doc. 114-3, at pp. 54:16-21; 112:23 to 113:13. Alexander and his partner heard two gunshots, so they drew their firearms and moved toward the area where they had heard the gunshots. *Alexander Dep.,* Doc. 114-3, at pp. 54:21 to 55:2.

Alexander observed people running from the area of the Foot Action store. *Alexander Dep.,* Doc. 114-3, at p. 55:2-10. Near the railing in front of the store, Alexander observed a male who appeared to be injured, and another male who appeared to be helping him. *Alexander Dep.,* Doc. 114-3, at p. 55:2-7. Alexander observed Emantic Fitzgerald Bradford, Jr. ("Bradford"), moving toward the two males with a handgun in his right hand. *Alexander Dep.,* Doc. 114-3, at p. 55:2-7.

Alexander fired his gun four times, with three of the bullets striking Bradford, one in the back of his head, killing him. *Alexander's Answer,* Doc. 46, at ¶¶ 40, 43 & 44. Alexander admits that he did not provide Bradford with a warning before he used deadly force against him. *Alexander Dep.,* Doc. 114-3, at p.130:20-22. Bradford was about 10 feet away from the two males when Alexander shot and killed him. *Alexander Dep.,* Doc. 114-3, at p. 115:11-17. Alexander believes it was

4

approximately five seconds from when he heard the gunshots until he shot and killed Bradford. *Alexander's Affidavit,* Doc. 99-1, at ¶ 11.

Alexander admits that his credibility is material in determining whether his use of deadly force was objectively reasonable. *Alexander Dep.,* Doc. 114-3, p.126: 9-19. Alexander stated in a *sworn affidavit* that he observed Bradford in a "ready to fire position." *Alexander Affidavit,* Doc. 99-1. Subsequently, Alexander admitted under oath at his deposition that he *never* saw Bradford in a "ready fire position." *Alexander Dep.,* Doc. 114-3, at p.132:14-20.

After reviewing the evidence, Plaintiff's qualified expert, Nicholas Bloomfield, issued the following <u>unrebutted</u> expert opinions:

1.      The ALERRT training which Alexander claimed informed his actions defines an active shooter event as, "one or more subjects who participate in a random or systematic shooting spree, demonstrating their intent to continuously harm others. An active shooter's overriding objective appears to be that of mass murder, rather than criminal conduct such as robbery, kidnapping, etc. The definition of active shooter includes any assault with a deadly weapon capable of causing a mass homicide." *Expert Report: Nicholas Bloomfield ("Expert Report"),* Doc. 114-2.

2.      A reasonable officer in Alexander's position would *not* have concluded that the firing of two rounds, with no additional rounds being fired, and the presence

of a possible gunshot victim, was connected or consistent with an active shooter event as defined by ALERRT. *Expert Report,* Doc. 114-2.

3.    It is well known and generally accepted in policing that a police officer's training does not dictate and cannot amend or supplant the legal calculus for deadly force. *Expert Report,* Doc. 114-2.

4.    A reasonable officer would know that training only informs principles, strategies, and tactics but does not dictate whether the circumstances an officer may face has met the criteria for deadly force. *Expert Report,* Doc. 114-2.

5.    The ALERRT training informs officers that, "First responders should remember, once you make the decision to pull the trigger you cannot stop the projectile if the decision is wrong," therefore, the ALERRT curriculum emphasizes that the "demeanor or compliance to verbal commands or the situation in general should be the final check." *Expert Report,* Doc. 114-2.

6.    It is well known and generally accepted in policing that when officers enter any space to investigate any crime, in particular critical incidents involving potential in-progress violent felonies, it is consistent with generally accepted police practices for officers to *immediately* and *repeatedly* identify themselves as police officers, announce their presence, and provide commands and directives appropriate for management of the unfolding emergency. *Expert Report,* Doc. 114-2.

7.    Alexander's failure to immediately and repeatedly announce and identify himself as a police officer, was unreasonable, tactically unsound, and contrary to generally accepted police practices. *Expert Report,* Doc. 114-2.

8.    Based upon the totality of the circumstances known to Alexander, a reasonable officer would be aware that Bradford might be a plain-clothes or off-duty officer, or a Good Samaritan. *Expert Report,* Doc. 114-2.

9.    The surveillance video does not show Bradford assume a position that would be consistent with, "a bladed shooting stance." *Expert Report,* Doc. 114-2.

10.    A reasonable officer in Alexander's position would know that Bradford was holding the handgun in a *non-firing* position. *Expert Report,* Doc. 114-2.

11.    It is well known and generally accepted within policing that, "where feasible, an officer shall identify themselves as a law enforcement officer and warn of his or her intent to use deadly force." *Expert Report,* Doc. 114-2.

12.    A reasonable officer in Alexander's position would have known that the totality of the circumstances provided a reasonable opportunity to provide a verbal warning prior to using deadly force against Bradford. *Expert Report,* Doc. 114-2.

13.    A reasonable officer in Alexander's position would have concluded that a warning prior to using deadly force against Bradford was both feasible and necessary. *Expert Report,* Doc. 114-2.

14.    A reasonable officer would have known that the failure to provide a verbal warning prior to using deadly force against Bradford would violate clearly established law. *Expert Report,* Doc. 114-2.

15.    Alexander's failure to provide a verbal warning in the form of verbal commands, directives, and/or warnings prior to using deadly force against Bradford was unreasonable, and contrary to generally accepted police practices. *Expert Report,* Doc. 114-2.

**Scope of review for each contention:** This Court reviews *de novo* a district court's order granting summary judgment, construing the evidence and drawing all reasonable inferences in favor of the nonmovants. *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.,* 48 F.4th 1298, 1301-02 (11th Cir. 2022). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A genuine dispute of fact exists, and summary judgment should be denied, "[i]f reasonable minds could differ on the inferences arising from undisputed facts." *Dean-Mitchell v. Reese,* 837 F.3d 1107, 1111 (11th Cir. 2016).

This Court reviews an order granting a motion to dismiss for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff. *Sibley v. Lando,* 437 F.3d 1067, 1070 (11th Cir. 2005). "To survive a motion to dismiss, a plaintiff needs to allege facts that are

'plausible on their face,' and 'raise a right to relief above the speculative level.'"
*Dorman v. Aronofsky,* 36 F.4th 1306, 1312 (11th Cir. 2022) (*quoting Bell Atl. Corp.
v. Twombly,* 550 U.S. 544, 555, 570 (2007).

## SUMMARY OF THE ARGUMENT

It was an error for the district court to supplant its *assumptions* regarding how
Bradford would have "appeared to reasonable police officers" for that of the
*opinions* of a qualified law enforcement expert, Nicholas Bloomfield. How the
totality of the circumstances would have "appeared to reasonable police officers," is
not a matter of common knowledge. As such, the opinions of a qualified expert was
presented in the record to provide the court with an opportunity to view the totality
of the circumstances through the lenses of properly trained and similarly experienced
police officers. Notably, since Alexander did not rebut Plaintiff's expert's opinions,
the district court was required to accept the opinions as undisputed. The opinions of
the qualified expert provided under penalty of perjury are evidence of record that the
district court was not permitted to disregard.

Alexander is not entitled to qualified immunity or judgment on the merits on
the Fourth Amendment claims because (1) material facts of record are disputed, and
(2) because the undisputed facts establish that based on the totality of the
circumstances, a reasonable police officer would have known that using deadly force
against Bradford without first providing Bradford with a warning, violated clearly

established Fourth Amendment principles. Similarly, the City, Galleria, and Brookfield, are not entitled to judgment on the merits on the *Monell* claims because judgment was granted solely on the basis of the district court's incorrect decision that there was no underlying constitutional injury.

Alexander is not entitled to State-Agent Immunity pursuant to Alabama state law because (1) material facts of record are disputed, and (2) because the undisputed facts establish that based on the totality of the circumstances, a reasonable police officer would have known that using deadly force against Bradford without first providing Bradford with a warning, violated clearly established law.

The district court committed legal error, when it granted a motion to dismiss the state law claims asserted against the Galleria and Brookfield because Plaintiff alleged sufficient facts to state claims for relief that were plausible on their face.

## ARGUMENT

### A. The District Court Committed Error in Deciding as a Matter of Law that Alexander's Conduct Did Not Constitute a Constitutional Injury.

In determining whether Bradford suffered a constitutional injury, the district court stated that an officer may lawfully use deadly force when he:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary []; and (3) has given some warning about the possible use of deadly force, if feasible.

*Memorandum Opinion, Doc. 117, at p. 8* (*quoting Perez v. Suszczynski,* 809 F.3d 1213, 1218-19 (11th Cir. 2016) (*quoting Morton v. Kirkwood,* 707 F.3d 1276, 1281 (11th Cir. 2013)) (emphasis added)). In *Scott v. Harris,* however, the U.S. Supreme Court noted that the Fourth Amendment reasonableness inquiry is not so precise,

> *Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute "deadly force." Garner was simply an application of the Fourth Amendment's "reasonableness" test, *Graham,* supra, at 388, to the use of a particular type of force in a particular situation. *Garner* held that it was unreasonable to kill a "young, slight, and unarmed" burglary suspect, 471 U.S., at 21, by shooting him "in the back of the head" while he was running away on foot, *id.,* at 4, and when the officer "could not reasonably have believed that [the suspect] … posed any threat," and "never attempted to justify his actions on any basis other than the need to prevent an escape," *id.,* at 21. Whatever *Garner* said about the factors that might have justified shooting the suspect in that case, such "preconditions" have scant applicability to this case, which has vastly different facts. "*Garner* had nothing to do with one car striking another or even with car chases in general … . A police car's bumping a fleeing car is, in fact, not much like a policeman's shooting a gun so as to hit a person." *Adams v. St. Lucie County Sheriff's Dept.,* 962 F.2d 1563, 1577 (CA11 1992) (Edmondson, J., dissenting), adopted by 998 F. 2d 923 (CA11 1993) (en banc) (per curiam). Nor is the threat posed by the flight on foot of an unarmed suspect even remotely comparable to the extreme danger to human life posed by respondent in this case. Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of "reasonableness." Whether or not Scott's actions constituted application of "deadly force," all that matters is whether Scott's actions were reasonable.

*Scott v. Harris,* 550 U.S. 372 (2007). In this matter, after resolving all factual disputes and reasonable inferences in favor of Plaintiff, the non-moving party, it

cannot fairly be said as a matter of law that Alexander's use of deadly force against

Bradford did not constitute a violation of the Fourth Amendment.

> **1. The Totality of Circumstances Fell Short of the Requisite Probable Cause that Bradford Presented as a Serious or Deadly Threat or of Having Committed a Violent Crime.**

This Court's inclusion of the words "probable cause" in the applicable inquiry

is not without reason. Police officers are not permitted to *assume* the existence of a

serious or deadly threat or the commission of a violent crime, and the Fourth

Amendment certainly does not give license to police officers to just flip a coin when

using deadly force. Rather, even in the face of the highest level of government

interest, the probable cause threshold stands guard to protect the innocent –

undercover police officers, off-duty police officers, Good Samaritans, and crime

victims. The probable cause threshold was there to protect Bradford.

It is for this reason that this Court has determined that "the mere presence of

a gun or other weapon is not enough to warrant the exercise of deadly force and

shield an officer from suit," *Perez v. Suszczynski,* 809 F.3d 1213, 1218-19 (11th Cir.

2016), while at the same time holding that when a suspect's gun is "available for

ready use," an officer is "not required to wait and hope for the best," *Powell v. Snook,*

25 F.4th 912, 920-21 (11th Cir. 2022) (upholding grant of qualified immunity when

deadly force used against a homeowner who began to raise his gun up to point it at

a police officer in the dark while both were investigating a disturbance), <u>cert. denied</u>, 2022 WL 4652025 (Oct. 3, 2022).

Regarding factor one – whether the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm," the district court stated in relevant part,

> Here, Bradford's weapon was in his hand, he was running toward the injured man, and he could have used the gun at any point. The court finds that this factor weighs in favor of a finding that Officer Alexander's use of force was reasonable. *See Jean-Baptiste v. Gutierrez,* 627 F.3d 816, 821 (11th Cir. 2010) (holding that an officer was entitled to qualified immunity regardless of whether the suspect had pointed the gun at the officer because the suspect's gun was available for ready use and the officer was not required to wait and hope for the best); *see also Montoute v. Carr,* 114 F.3d 181, 185 (11th Cir. 1997) (determining that an officer was entitled to qualified immunity even where an armed suspect never turned to face the officer because the suspect could have turned "in a split second").

*Memorandum Opinion, Doc. 117, at p. 9.* On the present record, it was an error for the district court to reach its conclusion.

First, *Jean-Baptiste* and *Montoute* are distinguishable on their facts and misapplied. In *Jean-Baptiste,* the officer shot a person who faced him while holding a gun, *when the officer had probable cause* to believe that the person had committed an armed burglary and robbery, engaged in a highspeed pursuit while committing dangerous traffic violations, and ran from a pursuit ending vehicle accident. In *Montoute*, the officer shot a person in the rear buttock who was running away, when

*the officer had probable cause* to believe that the person had fled the scene of a shooting, possessed a sawed-off shotgun which was a felony, refused orders to drop the shotgun, and even after being shot at, failed to heed clear orders to stop fleeing. Unlike *Jean-Baptiste* and *Montoute*, where the requisite probable cause existed, Alexander faced a *balanced scale* regarding whether Bradford was (1) a criminal suspect who presented as a serious or deadly threat, or (2) an undercover or off-duty police officer, Good Samaritan, or crime victim. Unlike *Jean-Baptiste* and *Montoute,* Alexander did not possess the requisite probable cause to believe that Bradford presented as a serious or deadly threat to anyone, or that he had committed a crime involving the infliction or threatened infliction of serious physical harm.

Second, unlike in *Powell,* Alexander never observed Bradford assume a shooting stance.

### 2. The District Court Incorrectly Supplanted its *Assumptions* Regarding How Bradford Would Have Appeared to "Reasonable Police Officers" in Place of the Opinions of a Qualified Expert.

Regarding the second factor – whether Alexander reasonably believed that the use of deadly force was necessary – the district court stated,

> As the Eleventh Circuit has clarified, "the second factor can be reduced to a single question: 'whether, given the circumstances, [plaintiff's decedent] would have appeared to reasonable police officers to have been gravely dangerous.'" *Penley,* 605 F.3d at 851 (*quoting Pace v. Capobianco,* 283 F.3d 1275, 1281 (11th Cir. 2002)). Because shots had just been fired immediately before Officer Alexander saw Bradford running with a gun in his hand toward the injured man, Bradford would have appeared to a reasonable police officer to pose an imminent and

14

dire threat to the injured man and others at the scene. It was reasonable for Officer Alexander to conclude in the heat of the moment, seconds after shots were fired, that Bradford was the shooter and was heading toward the injured man to finish him off. (Doc. # 114-3 at 60-62). Therefore, the court finds that this factor weighs in favor of a finding that Officer Alexander's use of force was reasonable.

*Memorandum Opinion, Doc. 117, at pp. 9-10.* On the present record, it was an error for the district court to reach this conclusion.

When deciding a motion for summary judgment, the district court is required to resolve all reasonable doubts about the facts and all justifiable inferences in favor of the non-movant, *see Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1314 (11th Cir. 2007). As such, it was an error for the district court to supplant its *assumptions* regarding how Bradford would have "appeared to reasonable police officers" for that of the *opinions* of a qualified law enforcement expert, Nicholas Bloomfield.

How the totality of the circumstances would have "appeared to reasonable police officers," is not a matter of common knowledge. As such, the opinions of a qualified expert was presented in the record to provide the court with an opportunity to view the totality of the circumstances through the lenses of properly trained and similarly experienced police officers. Notably, since Alexander did not rebut Plaintiff's expert's opinions, the district court was required to accept the opinions as undisputed. Furthermore, regarding the weight to be afforded the expert's opinions,

a reasonable inference that can be drawn from the fact that Alexander did not rebut Plaintiff's expert's opinions is that he could not do so.

While the district court determined that "Bradford would have appeared to a reasonable police officer to pose an imminent and dire threat to the injured man and others at the scene," Plaintiff's qualified expert did not agree. Importantly, the district court's speculations regarding how Bradford would have "appeared to reasonable police officers," are without an evidentiary anchor. The opinions of the qualified expert provided under penalty of perjury, however, are evidence of record that the district court was not permitted to disregard.

### 3. Whether it was Feasible for Alexander to Issue a Warning Before Shooting and Killing Bradford is a Disputed Material Fact.

Regarding the third factor – whether it was feasible for Alexander to issue a warning before shooting and killing Bradford – the district court stated,

> Five seconds elapsed from when Officer Alexander heard the first shots fired until he saw Bradford running with a gun in his hand toward a man who likely had already been shot. Given this extremely brief period of time, the evidence here is undisputed: it was not feasible for Officer Alexander to issue a warning before shooting Bradford. Bradford was running with a gun in his hand and was only about 10 feet away from the injured man when Officer Alexander fired. In light of these rapidly evolving circumstances, "this factor weighs in favor of immunity." *Cook v. Cobb Cnty., Georgia,* 2022 WL 3758235, at *6 (N.D. Ga. Aug. 29, 2022).

*Memorandum Opinion, Doc. 117, at p. 10.* On the present record, it was an error for the district court to reach this conclusion.

Plaintiff's qualified expert opined that it is well known and generally accepted in policing that when officers enter any space to investigate any crime, in particular critical incidents involving potential in-progress violent felonies, it is consistent with generally accepted police practices for officers to *immediately* and *repeatedly* identify themselves as police officers, announce their presence, and provide commands and directives appropriate for management of the unfolding emergency. *Expert Report, Doc. 114-2.* Meaning, from the moment Alexander heard the gunshots, *before he even observed Bradford,* due to the very real probability that at least one undercover or off-duty police officer, or a citizen with a state issued license to carry will be present in the crowded mall, a reasonable police officer would have begun *immediately* and *repeatedly* yelling warnings that police officers are present and operating in the area. The very purpose in doing so is to protect the Fourth Amendment rights of innocent persons and to provide them with an opportunity to decide their fate.

Plaintiff's expert opined that a reasonable police officer would have concluded that the totality of the circumstances provided a reasonable opportunity to provide such a warning and concluded that it was both feasible *and necessary in this specific incident* to do so. *Expert Report, Doc. 114-2.* As the expert explained, the necessity of the warning in this specific incident was occasioned by the absence of probable cause that Bradford presented as a serious or deadly threat to anyone, or

that he had committed a crime involving the infliction or threatened infliction of serious physical harm. Alexander's failure to act as a reasonable police officer would have acted in the same or similar circumstances was objectively unreasonable.

## B. Alexander's Failure to Act as a Reasonable Police Officer Would Have Acted Violated Clearly Established Law.

"The qualified immunity doctrine protects an officer unless at the time of the officer's supposedly wrongful act the law 'was already established to such a high degree that every objectively reasonable' officer in his place 'would be on notice' that what he was doing was 'clearly unlawful given the circumstances.'" *Powell v. Snook,* 25 F.4th 912, 920 (11th Cir. 2022) (*quoting Pace v. Capobianco,* 283 F.3d 1275, 1282 (11th Cir. 2002).

This is not a case that can be matched to a similar fact pattern that has been repeatedly decided by the courts. Similarly, this is not a case where the conduct is so egregious that its unlawfulness simply cannot be credibly disputed. Rather, this is a case that presents a novel set of facts – a shooting in a mall where a police officer responds and intentionally shoots and kills a Good Samaritan without warning. Unlike the remotely similar cases that Alexander was able to locate, in this case, the Good Samaritan who was killed had not received and ignored warnings, an officer was not being attacked or about to be attacked, no weapon had been pointed at anyone, and reasonable suspicion, *not probable cause*, existed to support a limited detention only.

18

"[I]f the plaintiff cannot find a materially similar factual case from the Supreme Court, our Court, or, in this case, the Supreme Court of Alabama, a plaintiff can 'show that a broader, clearly established principle should control the novel facts in this situation.'" *Patel v. City of Madison, Alabama,* 959 F.3d 1330 (11th Cir. 2020) (*quoting Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005)).

## 1. The Permanent Seizure of Bradford's Person, Supported by Reasonable Suspicion Only, Violates Clearly Established Law.

The district court stated that "To receive qualified immunity, [however,] an officer need not have actual probable cause, but only 'arguable' probable cause." *Memorandum Opinion, Doc. 117, at p. 11 (quoting Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1257 (11th Cir. 2010)). The district court further stated,

> The circumstances of this case, taken as a whole, are sufficient to demonstrate that Officer Alexander had reasonable suspicion to detain or "seize" Bradford when he (Bradford) ran toward an injured man with a gun in his hand immediately after two shots had been fired. It was also reasonable for a police officer to conclude that Bradford, who was running toward a gunshot victim with a gun in his hand shortly after shots were fired in a crowded mall, posed a significant threat of criminal activity and a deadly threat to the safety of others at the scene.

*Memorandum Opinion, Doc. 117, at p. 12.* First, applying clearly established Fourth Amendment principles, the sound of gunshots at 3:00 AM in a desolate neighborhood followed by the observation of a person with a gun moving towards an injured person *might* establish the requisite probable cause that the armed person

19

presents as a serious or deadly threat, or that the person had committed a violent crime. But this is not that case.

Plaintiff's expert opinioned that the sound of two gunshots in a very crowded mall followed by the observation of a person with a gun *in a non-shooting position* moving towards an injured person, without more, would not lead a reasonable police officer to conclude that probable cause existed that the armed person presents as a serious or deadly threat, or that the person had committed a violent crime. Plaintiff's expert explained that his opinion is anchored in the standardized training that is provided to police officers regarding what the law permits with respect to the use of deadly force. Notably, even Alexander admits that he never had more than reasonable suspicion to stop Bradford. *Alexander Dep.,* Doc. 114-3, at p. 98:11-15.

As the district court correctly noted, "The Supreme Court has held that an officer may not only stop, but also conduct a limited detention of someone whom the officer *reasonably suspects* may pose a threat of criminal activity, in order 'to dispel [the officer's] reasonable fear for his own or others' safety[.]'" *Memorandum Opinion,* Doc. 117, at p. 12 *(quoting Clark v. City of Atlanta, Ga*., 544 F. App'x 848, 853 (11th Cir. 2013) (emphasis added) (*quoting Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The Supreme Court, however, has never held, and reasonable police officers are not taught, that a police officer may shoot someone dead to dispel their fear. A *limited detention* based on *reasonable suspicion* for the purpose of further

investigation falls well short of a permanent seizure achieved through the use of deadly force.

### 2. Alexander's Failure to Provide Any Warning Prior to the Use of Deadly Force Violated Clearly Established Law.

The district court stated, "Notably absent from her brief, however, is any attempt to distinguish the recent, factually-similar Eleventh Circuit case of *Powell v. Snook,* which Officer Alexander pointed to in his initial brief." The Court further stated, "In her brief, Plaintiff notes but does not substantively address *Vaughn v. City of Orlando*, 2009 WL 3241801 (M.D. Fla. 2009)."

The district court is mistaken. In Plaintiff's brief, she specifically addressed why both *Powell* and *Vaugh,* in addition to every other case cited by Alexander, are distinguishable*,* arguing,

> ALEXANDER cites numerous cases in support for his request for immunity. Every case cited, however, can be distinguished from the instant matter. In every case cited, deadly force was used only after verbal warnings were ignored, an officer was being physically attacked, credible evidence existed that an officer was about to be violently attacked, a person pointed a weapon at an officer, *or* probable cause existed that the person had just committed a violent crime, was not under control, and had the means to continue the violence.
> *****
> Vaughn v. City of Orlando, 2009 WL 3241801 (M. D. Fla): Granted immunity for shooting an officer who was in plain clothes who was pointing a gun at an injured person laying on the ground.
> *****
> Powell v. Snook, 25 4th 912 (11th Cir. 2022): Granted immunity for shooting a person who raised a firearm and pointed it at the police officer in the dark.

*Plaintiff's Brief in Opposition,* Doc. 108, at pp. 7-9. Unlike both *Powell* and *Vaughn*, it is undisputed that Bradford never pointed his gun at anyone and never assumed a shooting stance.

The Eleventh Circuit has determined that a department's policies and training are relevant to the qualified immunity inquiry. *See Charles v. Johnson,* No. 20-12393, 2021 WL 5313668, at *10 (11th Cir. Nov. 16, 2021) ("Once we determined that the use of force was excessive, the next question in the qualified immunity analysis asks whether the officer violated clearly established law. A police handbook that directs an officer to avoid a particular unconstitutional activity can be evidence that the officer was so warned.") (*discussing Mercado v. City of Orlando,* 407 F.3d 1152 (11th Cir. 2005)).

Accordingly, a reasonable police officer's understanding of clearly established law in a given circumstance depends in part on that officer's training. *New v. Denver,* 787 F.3d 895, 901 (8th Cir. 2015) (officer entitled to qualified immunity because "an objectively reasonable police officer with [defendant's] training and experience could have reasonably believed that [he had] probable cause to arrest"); *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008) (affirming denial of qualified immunity where officers' conduct inconsistent with their "training and existing case law at the time"); *Weigel v. Broad,* 544 F.3d 1143, 1155 (10th Cir.2008) ("[T]he reasonableness of an officer's actions must be assessed in light of the

officer's training."); *Estate of Booker v. Gomez,* 745 F.3d 405 (10th Cir. 2014); *Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1062 (9th Cir. 2003) (police department training materials are relevant for purposes of qualified immunity when assessing "whether reasonable officers would have been on notice that the force employed was objectively unreasonable."); *Gottlieb v. Cty. of Orange,* 871 F.Supp. 625, 629 (S.D.N.Y. 1994) (entitled to qualified immunity "[g]iven the procedures and training they were given, it was objectively reasonable for the[m] . . . to believe that their acts . . . did not violate the plaintiffs' constitutional rights"), aff'd, 84 F.3d 511 (2d Cir. 1996); *Bowyer v. Houck,* No. 5:05-CV-00628, 2006 WL 6854908, at *2 (S.D.W. Va. Nov. 14, 2006) (in qualified immunity inquiry, "[c]learly, an objectively reasonable officer would consider his training when making a split-second decision to use [force]"); *Carrero v. Farrelly,* 310 F.Supp.3d 581 (D. Md. 2018) ("Officer Farrelly's training, or lack thereof, is highly relevant to what he 'knew or reasonably should have known . . . under the circumstances, and therefore whether he is entitled to qualified immunity.") (*quoting Harlow,* 457 U.S. at 815); *Jackson v. Tellado,* 236 F.Supp.3d 636 (E.D. N.Y. 2017) (taking an officer's training into account in the qualified immunity analysis).

Aside from the fact that police officers are required to give a warning before using deadly force if a warning is feasible, *see Cantu v. City of Dothan,* 974 F.3d 1217, 1229 (11th Cir. 2020), Plaintiff's expert explained that it is well known and

generally accepted in policing that when officers enter any space to investigate any crime, in particular critical incidents involving potential in-progress violent felonies, it is consistent with generally accepted police practices for officers to *immediately* and *repeatedly* identify themselves as police officers, announce their presence and provide commands and directives appropriate for management of the unfolding emergency.

It was an error for the district court to disregard Plaintiff's expert's opinions establishing that Alexander's training placed him on notice that in the specific circumstance that he confronted, the failure to *immediately* and *repeatedly* announce and identify himself as a police officer operating in the space before using deadly force was unreasonable and contrary to general Fourth Amendment principles.

## C. The District Court Improperly Granted Judgment on the Monell Claim.

The district court granted judgment to the City, Galleria, and Brookfield, on the Monell claim find,

> the *Monell* claim is foreclosed by the court's Rule 56 finding in favor of Alexander that there was no underlying constitutional violation. "'There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.'" *Jacobs v. Ford,* 2022 WL 1123384, at \*4 (11th Cir. Apr. 15, 2022) (quoting *Knight ex rel. Kerr v. Miami-Dade Cnty.,* 856 F.3d 795, 821 (11th Cir. 2017)).

*Memorandum Opinion,* Doc. 127, at p.7. It was an error for the district court to grant judgment on the *Monell* claim because the judgment rests solely on the district court's incorrect determination that there was no underlying constitutional injury.

### D. The District Court Improperly Granted Alexander State-Agent Immunity.

For the same reason that Alexander is not entitled to qualified immunity under federal law, and because material facts are disputed, Alexander is not entitled to immunity on the state law claims. *Alabama Code 6-5-338(a)* provides that a police officer is entitled to immunity from tort liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her duties." The statute is analyzed pursuant to cases addressing state-agent immunity. State-agent immunity is frequently referred to as discretionary function immunity. *Blackwood v. City of Hanceville,* 936 So.2d 495 (Ala. 2006). Essentially, "the statute shields every defendant who (1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion." *Howard v. City of Atmore,* 887 So. 2d 201, 204 (Ala. 2003).

Pursuant to *Ex Parte Cranman,* state-agent immunity does not apply:

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex Parte Cranman,* 792 So. 2d 392, 405 (Ala. 2000). *Alabama Code § 13A-3-21(d)(1) (1975)* provides that a "person who uses force, including deadly force, as justified and permitted in this section is immune from criminal prosecution and civil action for the use of such force, *unless the force was determined to be unlawful.*" (emphasis added). As such, if it is determined that Alexander's use of deadly force was unlawful, pursuant to *Ex Parte Cranman* and *Alabama Code § 13A-3-21(d)(1) (1975)*, Alexander is not entitled to immunity.

### E. The Motion to Dismiss Counts V and VI Should Have Been Denied Because Plaintiff Stated Facially Plausible Claims for Relief.

#### 1. The Motion to Dismiss Counts V Should Have Been Denied.

In dismissing Count V of the First Amended Complaint, the district court determined that "Plaintiffs have not plausibly alleged the duty element of a premises liability negligence claim against the Mall Defendants." *Memorandum Opinion,* Doc. 117, at p. 9. Specifically, the district court determined that "Plaintiffs have not alleged that EJ was completely dependent upon the Mall Defendants for protection . . . [and that] his "status as an invitee at the [Galleria], by itself, is not sufficient to invoke the special relationship exception." *Id. (quoting Martinez v. Espey*, 2018 WL 1210932, at *4 (N.D. Ala. Mar. 8, 2018). The court's determination is not correct.

The relationship between a business owner and an invitee (in this case Bradford) is a recognized "special relationship" that creates a duty on the business owner to "use ordinary care to keep their premises in [a] reasonably safe condition." *Ex parte Wild West Soc. Club, Inc.,* 806 So.2d 1235, 1240 (Ala. 2001). Whether the business owner owes a duty to use ordinary care depends upon "the foreseeability that harm may result if care is not exercised." *Id.* However, "foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated." *Id.* at 1241 *citing, Thetford v. City of Clanton,* 605 So.2d 835, 840 (Ala.1992); *see also, Moye v. A.G. Gaston Motels, Inc.,* 499 So.2d 1368, 1371 (Ala. 1986) (*quoting Ortell v. Spencer Companies, Inc.,* 477 So.2d 299, 299 (Ala. 1985) ("a duty may be imposed on a store [premises] owner to take reasonable precautions to protect invitees from criminal attack in the exceptional case where the store owner possessed actual or constructive knowledge that criminal activity which could endanger an invitee was a probability.")

Defendants seek to escape liability by contending that they did not have reason to know that there would be a shooting and that Alexander would respond and kill the wrong person. But that is a specious argument because it is foreseeable that an officer who had not been trained to provide private security and who had little to no experience working in private security in a mall would negligently/wantonly respond

to a shooting. This is precisely what untrained police officers do – they recklessly and/or wantonly panic and shoot innocent people.

Notably, however, foreseeability does not require this level of specificity. Rather, the Galleria and Brookfield needed only to know that by allowing an unlicensed patron (Erron Brown) to enter the mall with a firearm, someone could be harmed. *See Ex parte Wild Wild West Soc. Club, Inc.,* 806 So.2d at 1241 (the specific consequence does not need to be foreseeable; only that some general harm or consequence could have been anticipated).

Considering the security measures taken by the Galleria and Brookfield to protect patrons from crime, they cannot credibly claim that they did not have notice of the foreseeable risk that a person would enter the mall with a weapon and an intention to cause violence.  Appreciating the foreseeable danger, the Galleria and Brookfield hired additional security provided by the City to provide an "increased police presence during the heavy holiday shopping events, like Black Friday." See Doc 52-1, ¶6. *See Liberty Nat. Life Ins. Co. v. Weldon,* 100 So.2d 696, 710 (Ala. 1957) (duty to protect from third-party criminal act if dangerous condition created at a place where persons of peculiarly vicious type are likely to be). With an untrained officer providing private security, it was certainly foreseeable that the officer would respond to the incident, and cause injuries to others.

28

Second, the type of crime that Erron Brown committed (assault) was within the class of crimes to be expected by one in possession of a firearm. *See, Liberty Nat. Life Ins. Co. v. Weldon,* 100 So.2d at 710 (defendant's conduct must be likely to lead to the commission of a fairly definite type of crime). Pursuant to *Code of Alabama §13A-11-70 (1975)*, crimes of violence include, murder, manslaughter, assault with intent to murder, and any Class A or B felony that has as an element of serious physical injury. Assuming *arguendo,* the ultimate result of Brown's actions was not foreseeable, it was certainly foreseeable that a shooting could occur if Brown was allowed to bring a pistol into the mall, to which contracted security police officers (i.e, Alexander) would respond.

Moreover, a duty may be assumed where, ordinarily, one may not exist. *See RESTATEMENT (SECOND) OF TORTS* §324A (1966). The voluntary assumption of a duty to protect gives rise to a concomitant duty to act as a reasonably prudent person under the circumstances. *See Dailey v. City of Birmingham,* 378 So.2d 728, 729 (Ala. 1979); *see also, Raburn v. Wal-Mart Stores, Inc.,* 776 So.2d 137, 139 (Ala. Ct. Civ. App. 1999). Whether a duty to protect has been voluntarily assumed is a fact-specific inquiry. *See, Bryan v. Alabama Power Co.,* 20 So.3d 108, 119 (Ala. 2009).

In *Raburn,* Wal-Mart security personnel/loss prevention observed shoplifters conceal merchandise inside their clothing and attempted to apprehend them. While escorting the shoplifters to the office, one shoplifter turned and ran, colliding with

Raburn, a patron, and knocking him unconscious. The Court held "[w]hile there is no initial legal duty on the part of a premises owner to prevent injuries to business invitees resulting from criminal acts, Alabama law recognizes the principle that liability to third parties can result from the *negligent performance of a voluntary undertaking*." *Raburn v. Wal-Mart,* 776 So.2d at 137.

Similarly, Plaintiff alleged that the Defendants contracted with the City for police officers to provide mall security. *First Amended Complaint,* Doc. 46, at ¶ 75. Thus, it is undisputed that the Defendants voluntarily undertook a duty to provide security for mall patrons, including Bradford, and in so doing, had a duty to exercise reasonable care. It is a question of fact for a jury as to whether Alexander was a properly trained security officer following a proper plan to provide private security in the Galleria on Black Friday when he shot and killed Bradford. As such, Defendants' motion to dismiss should have been denied; *see also Brock v. Watts Realty Co.,* 582 So. 2d 438 (Ala. 1991) (premises owner had exclusive control over how the building where the Plaintiff was killed was secured).

### 2. The Motion to Dismiss Counts VI Should Have Been Denied.

"[T]o prove a claim under Alabama law for either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent. *See Armstrong Bus. Servs. v.*

*AmSouth Bank,* 817 So.2d 665, 682 (Ala. 2001) (negligent supervision); *Bruck v. Jim Walter Corp.,* 470 So.2d 1141, 1144 (Ala. 1985) (negligent/wanton entrustment); *Brown v. Vanity Fair Mills, Inc.,* 277 So.2d 893, 895 (Ala.1973) (negligent retention); *Sanders v. Shoe Show, Inc.,* 778 So.2d 820, 824 (Ala.Civ.App. 2000) (negligent hiring)."

In dismissing Count VI, the district court stated, "Plaintiffs have not alleged any prior incompetence by Alexander, much less that the Mall Defendants were aware of Alexander's alleged incompetence." This is not correct. Plaintiff alleged a host of training and policy deficiencies that resulted in the Galleria's security personnel being collectively incompetent, i.e., "knew that their security/police officers routinely made incorrect use of force decisions that resulted in violations of citizens' civil rights," *First Amended Complaint,* Doc. 46, at ¶ 81(f), "knew that their security/police officers routinely incorrectly identified persons as threats, which resulted in violations of citizens' civil rights," *Id.,* at ¶ 81(h), "knew that their security/police officers were routinely required to deescalate potentially volatile situations but did not know how to correctly do so," *Id.,* at ¶ 81(p), and "knew that because their security/police officers were routinely failing to deescalate potentially volatile situations, citizens' civil rights were violated," *Id.,* at ¶ 81(q).

The district court erred in deciding that Plaintiff did not state wantonness claims simply because the Court determined that Plaintiff did not meet the lower

standard of negligence. As argued above, Plaintiff has sufficiently alleged a negligence claim and submit that the same allegations similarly meet the pleading burden for wantonness.

Finally, the district court stated that "in Counts Five and Six, Plaintiffs assert both negligence and wantonness claims. Therefore, these claims are due to be dismissed because they constitute shotgun pleading[.]" *Memorandum Opinion,* Doc. 117, at p. 12. Plaintiff respectfully disagrees. Counts Five and Six are properly divided into two claims, each based on a single transaction or occurrence. Further division on the claims is not required to comply with FED.R.CIV.P. 10(b) ("*If doing so would promote clarity,* each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.) Regardless, dismissal on this basis alone would elevate substance over form and would violate FED.R.CIV.P. 1 ("They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.)

## CONCLUSION

Plaintiff respectfully requests that this Court reverse the district court's Memorandum Opinion and Order, Doc. 59, dismissing Counts V and VI; reverse the district court's Order, Doc. 118, granting Alexander's Motion for Summary Judgment; reverse the district court's Final Judgment, Doc. 128, granting summary

32

judgment to the City, Galleria, and Brookfield on the Monell claims, and dismissing Plaintiff's remaining wrongful death/negligence/wantonness claim against the City.

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 7,931 words.

s/ *Devon M. Jacob*

Devon M. Jacob, Esquire
Pennsylvania Bar No. 89182
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, PA 17055-0837
717.796.7733

*Attorney for Appellant*
APRIL M. PIPKINS

## CERTIFICATE OF SERVICE

I certify that on May 23, 2023, I served Appellant's Opening Brief via the Court's CM/ECF system, which pursuant to 11th Cir. R. 25-3(a), constitutes proper service upon the following attorneys of record:

Joel E. Dillard

Albert L. Jordan

Daniel J. Newton

Cecil Macoy, Jr.

Donald R. James, Jr.

Rodney F. Barganier

s/ *Devon M. Jacob*

Devon M. Jacob, Esquire
Pennsylvania Bar No. 89182
Jacob Litigation, Inc.
P.O. Box 837
Mechanicsburg, PA 17055-0837
717.796.7733

*Attorney for Appellant*
APRIL M. PIPKINS